UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | No.   13-CR-10276-MLW |
| v. ] | |
| ] | |
| MARGARET MATHES, BOSEBA PRUM, ] | |
| SAM PICH, and THAWORN PROMKET ] | |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The government hereby submits a supplemental sentencing memorandum summarizing additional evidence that is material to the Court's sentencing determination but was obtained after the parties' initial sentencing memoranda were due on January 15, 2015.

**I.   Based on Recent Surveillance, It Appears That Margaret Mathes and Her Co-Defendants Have Either Fabricated or Severely Exaggerated Mathes's Mental Deterioration**

The defendants have pleaded guilty to a tax fraud scheme through which they hid over $25,000,000 in employee wages from the Internal Revenue Service ("IRS") and caused about $6,000,000 in losses to the IRS and a local workers compensation insurer. Margaret Mathes admits running the scheme, but in November 2014 she was provisionally diagnosed with Alzheimer's Disease. The government does not dispute the bare diagnosis, and has adjusted its sentencing recommendation for Mathes based on the generally progressive nature of that illness.

In several venues, however, Mathes and her co-defendants have also claimed that she suffers current, severe mental deterioration from the disease. The defendants pleaded guilty on August 28, 2014. On October 21, 2014, according to notes taken by Mathes's doctor, defendant Boseba Prum told him that Mathes "could not complete a meal by herself" and that Mathes "was involved in 2 motor vehicle accidents one totaling her car . . . and is no longer allowed to drive. . . . She is now living with daughter." *See* **Tab A** (excerpts from medical records). On November

1

6, 2014, Prum told the doctor that Mathes "will be moving to daughter's house due to being forgetful . . . daughter is planning to apply as [Mathes's] caretaker." *See id*. In cognitive tests administered during that visit Mathes posted mediocre scores and apparently "was unable to draw [a] clock and had difficulty with serial category naming." *See id*.

Similarly, that same month defendant Prum told the Probation Department that Mathes "was beginning to demonstrate signs of dementia," and consequently Probation sought court approval for Mathes to move to Prum's residence. *See* **Tab B** (letters submitted to Court by Probation Department). Probation believes that "Ms. Mathes has been residing with her daughter at her daughter's home in Lowell, MA since December 2014," *id*.; defendant Thaworn Promket, Prum's husband, reported the same thing. *See id*.

In January 2015, after being told of Mathes's diagnosis and that her mental condition would be used to support seeking a lower sentence, government agents began surveillance of Mathes. While the government obviously lacks direct access to her, the evidence collected so far contradicts the defendants' claims about Mathes's deterioration.[1] Contrary to the defendants' statements, it appears that Mathes still lives alone at her original address; drives daily, capably and without incident; has not totaled her car, and is in fact driving the same car originally registered to her in September 2014;[2] and is aware and capable enough to (a) shovel her own driveway; (b) personally send 27 wire transfers in the last few months, via Western Union, to

---

[1] Beyond the doctor's records and Probation reports, similar assertions about Mathes's deterioration obviously appear in Mathes's sentencing memorandum. Assuming the government is correct that the defendants are trying to manipulate the Court, the government does not suggest that any defense counsel were complicit in that activity.

[2] The vehicle was previously registered to Boseba Prum. During surveillance in May 2013, agents observed the same vehicle in Mathes's driveway. The government notes that, based on insurance claim records search, Mathes was involved in a vehicle accident, in the RAV 4, in June 2014. This accident did not total the vehicle, however, deter Prum and Mathes from transferring it to Mathes's name two months later, or result in Mathes no longer driving. Also, when the insurance claim representative interviewed Prum (then the vehicle's owner), Prum claimed that Mathes was her sister, not her mother.

two foreign countries; (c) participate, sensibly and coherently, in the sentencing video defense counsel recently submitted to the Court; and (d) as noted by counsel in a filing on February 9, 2015, participate in her own preparation for sentencing.

### A. Surveillance Results

Mathes appears to be fully functional adult living independently in Lowell, Massachusetts:

- Based on early morning surveillance on January 21, 22, and 23, 2015, Mathes still lives by herself at her own home in Lowell – agents have routinely observed her car in her home driveway in the early morning hours, and have seen Mathes leaving the residence consistently at about 9:30 or 10:00 am. *See* **Tab C** (selected surveillance photographs).

- Based on morning and afternoon surveillance on January 21, 22, 23, and 26, 2015; and February 4, 2015, Mathes drives – alone – for substantial portions of each day, with apparent confidence and a detailed understanding of back roads and shortcuts in Lowell.

- Mathes drives a vehicle (a Toyota RAV 4) that is registered to her and was previously registered to her daughter, begging the question of what vehicle she "totaled" in an accident, as her co-defendants told her doctor. *See id.* (photographs including RAV 4).

- On February 4, 2015, agents recorded video footage of Mathes shoveling her own driveway, after which she drove away. *See id.* (photographs of Mathes shoveling).[3]

### B. Mathes's Use of Wire Transfers and Participation in Her Own Defense Preparations Corroborate That She Has No Current Deterioration That is Material for Sentencing Purposes

Business records recently received from Western Union show that Mathes personally sent 27 wire transfers to Cambodia and South Africa between September 1, 2014, and January 12, 2015: nine in September, four in October, six in November, six in December, and two in

---

[3] The government will attempt to have the video recording available on a laptop at sentencing, should the Court wish to see it.

January.  *See* **Tab D** (Excel spreadsheet provided by Western Union).  She sent them from three different locations in Lowell.

Mathes also participated at length in the recorded interviews – and presumably in preparations for them – underlying the 33 minute video the defendants submitted in January 2015 in support of their positions at sentencing.  Throughout the video, Mathes is coherent, focused and at times emphatic about her personal history.  There is no sign of deterioration or cognitive dysfunction.

In a similar vein, on February 9, 2015, the parties made a joint filing in response to the Court's inquiries about whether Mathes is competent to be sentenced.  In that memorandum, Mathes's counsel confirmed that she saw "no reasonable cause" to believe that Mathes was incompetent.  That assessment was based on significant contact with Mathes, much of it intended to prepare her for the complexities of a sentencing hearing:

> Counsel reviewed the materials submitted to the court by counsel for sentencing, discussed the arguments anticipated by both sides at the hearing, and prepared Mathes' allocution with Mathes at that meeting. Counsel also spoke to both Mathes' daughters, who attended the meeting with her. Counsel has also had telephone contact with Mathes since that January 23 meeting, and continues to have no concerns regarding her client's ability "to understand the nature and the consequences of the proceedings against [her] or to assist properly in [her] defense." 18 U.S.C. §4241(a).  In addition, counsel notes that there were no concerns regarding Mathes' competency at her Pre-Sentence Interview with probation on September 23, 2014, nor at her Rule 11 hearing on August 27, 2014. Counsel also interviewed Mathes for purposes of the sentencing video submitted to the Court on January 16, 2015, and likewise had no concerns about Mathes' competency at that time.

*Joint Resp. to Court's Jan. 30, 2015, Order Regarding Mathes's Mental Condition* at 1-2 (docket entry # 158).

In short, Mathes can live independently, drive daily, shovel her driveway, send 27 wire transfers to foreign countries, respond to interview questions for her sentencing video, and

4

prepare for sentencing. But apparently she can't draw a clock. *See* Tab A (doctor's notes).

## II.     Defendants Mathes and Prum Should Receive a Two-Level Enhancement for Obstructing Justice

In light of the above, Mathes and Prum should receive a sentencing enhancement for attempting to improperly influence these proceedings. *See* U.S.S.G. § 3C1.1 (willful attempt to obstruct or impede sentencing, *inter alia*, warrants two level increase); App Note 9 (defendant may receive enhancement for aiding and abetting obstruction by another). They appear to have systematically exaggerated Mathes's current symptoms to her doctor, to their lawyers and, importantly for these purposes, to the Probation Department and the Court.

Application Note Four to the obstruction guideline provides examples of conduct serious enough to warrant the enhancement; "providing materially false information to a judge," and "providing materially false information to a probation officer" are among them. *See id*. App. Note 4(F), (H); *see also, e.g., United States v. Biyaga*, 9 F.3d 204, 205 & n.2 (1st Cir. 1993) (affirming enhancement where defendant lied to magistrate court and, later, to probation officer about details of identity). Based on the above, Mathes's and Prum's assertions to Mathes's doctor, to Probation and, by extension, to the Court, are materially false, and the issue is surely material to the Court's sentencing decisions; beyond the moral *non sequitur* of emphasizing her suffering under the Khmer Rouge, it is her primary argument for leniency. And it appears that her co-defendants are betting on it as well, that is, that (a) Mathes's relatively senior role in the scam (which she has admitted) will prompt the Court to give *them* lower sentences, but (b) Mathes will get a lower sentence as well, if the Court believes she is substantially impaired.

Based on the above, the government respectfully suggests that the Court should be extremely skeptical of the defendants' claims concerning Mathes's mental state.

Respectfully submitted,

Carmen M. Ortiz
United States Attorney

By:   /s/ *Andrew Lelling*
      Andrew E. Lelling
      Assistant U.S. Attorney
      1 Courthouse Way
      Boston, MA  02210
      617-748-3177
      andrew.lelling@usdoj.gov

Date:  February 23, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants, on February 23, 2015.

      /s/ *Andrew Lelling*
      Andrew E. Lelling